CITY OF FORT SMITH *v.* O.K. FOODS, INC., and ARKANSAS PROTEINS, INC.

87-104 738 S.W.2d 96

Supreme Court of Arkansas
Opinion delivered October 26, 1987
[Rehearing denied December 7, 1987.]

*Daily, West, Core, Coffman & Canfield*, for appellant.

*Harper, Young, Smith & Maurras*, by: *Thomas Harper* and *Don A. Smith*, for appellees and cross-appellants.

JOHN I. PURTLE, Justice. The issue on appeal is the validity of a Fort Smith ordinance which increased sewer user fees. The chancellor found that the ordinance was not valid until the city published it in a local newspaper and in its decree awarded the appellees a partial refund of the increased sewer charges paid before that time. The city argues that the trial court erred in holding the ordinance was temporarily invalid and the appellees argue on their cross-appeal that the trial court erred in holding that the ordinance was ever enforceable. We affirm on direct

appeal and reverse on cross appeal holding that the ordinance never had life breathed into it and that accordingly the cross-appellants are entitled to a refund of all the overcharges paid.

Fort Smith Ordinance # 62-83 was to be effective October 1, 1983, and was repealed on May 1, 1986. On June 26, 1986, the appellees, O.K. Foods, Inc., and Arkansas Proteins, Inc., filed a complaint in the Sebastian County Court challenging the validity of the ordinance because Fort Smith failed to comply with the pre-enactment public hearing and notice requirements of Ark. Stat. Ann. § 19-4113 (Supp. 1985) as well as the post-enactment requirements of Ark. Stat. Ann. § 19-2404 (Repl. 1980). The appellees prayed for a refund of the increase in sewer rates paid pursuant to Ordinance # 62-83. The chancellor found that the city of Fort Smith did not substantially comply with § 19-4113 and § 19-2404 until the city published the ordinance in a local newspaper on February 15, 1985. The decree awarded O.K. Foods the sum of $282,324.98 and awarded Arkansas Proteins, Inc., $136,913.47 as refunds for the overcharge from October 1, 1983, to February 15, 1986.

Fort Smith asserts that it did not have to comply with the pre-enactment requirements of § 19-4113 because it was proceeding under Ark. Stat. Ann. § 73-245 (Repl. 1979). Act 132 of 1933 (Ark. Stat. Ann. § 19-4101 et seq. (Repl. 1980 and Supp. 1985)) authorizes a city or town to operate a sewage collection system and establish rates charged for the service. The pertinent part of § 19-4113 relating to sewer rates, states:

> After introduction of the ordinance fixing such rates or charges, and before the same is finally enacted, notice of such hearing, setting forth the proposed schedule of such rate or charges, shall be given by one publication in a newspaper published in the city or town, if there be such a newspaper, but otherwise in a newspaper having general circulation therein, at least ten days before the date fixed in such notice for the hearing, which may be adjourned from time to time. After such hearing the ordinance establishing rates or charges, either as originally introduced or as modified and amended, shall be passed and put into effect.

Act 132 of 1933 was very comprehensive and, as amended, still contains the only authority for a municipality to establish and

change its fees for sewage services.

Act 324 of 1935 (Ark. Stat. Ann. § 73-201 et seq. (Repl. 1979)), which the city claims gave it the authority to change its sewer rates, is printed under the Arkansas Statutes relating to the regulation of public utilities. Section 73-245 states as follows:

Any municipality shall have the power, subject to provisions of this Act, to acquire by purchase or otherwise, or construct and operate a public utility plant and equipment, or any part thereof, for the production, transmission, delivery or furnishing, of any public service.

As amended by Act 25 of 1973, a public utility is defined in Act 324 of 1935 or Ark. Stat. Ann. § 73-201(d) as follows:

(d) The term "public utility" when used in this Act includes persons and corporations, or their lessees, trustees and receivers, now or hereafter owning or operating in this state, equipment or facilities for:

. . .

(7) maintaining a sewage collection system and/ or a sewage treatment plant, intercepting sewers, outfall sewers, force mains, pumping stations, ejector stations and other appurtenances necessary or useful for the collection and/or treatment purification and disposal of the liquid and solid waste, sewage, night soil and industrial waste. *Provided, nothing in this paragraph shall be construed to include sewerage facilities and equipment of cities and towns in the definition of public utility.* [Emphasis added.]

It seems quite clear that the legislature cautiously amended the definitions of Act 324 of 1935 in order not to infringe upon or modify the power to set sewer rates previously granted to cities and towns. Certainly the legislature did not intend to grant additional authority to cities and towns to establish sewer rates subject to the review of the Public Service Commission.

The appellant correctly states that when acts of the legislature are cumulative to each other, providing alternative

procedures for accomplishing the same purpose, the municipality may proceed under either act. *Freeze, Mayor* v. *Jones & Harvel*, 260 Ark. 193, 539 S.W.2d 425 (1976); *City of Helena* v. *Arkansas Utilities Company*, 208 Ark. 442, 186 S.W.2d 783 (1945). It is also true that both Act 324 of 1935 and Act 132 of 1933 gave municipalities different cumulative procedures for acquiring a sewage system. However, only Act 132 of 1933 gives a city the specific authority to set sewer rates and only Act 132 of 1933 provides a procedure for changing those rates. Fort Smith did not have alternative authority to change its sewer rates under Act 324 of 1935 and ignore the pre-enactment notice and public hearing requirements of Act 132 of 1933.

Fort Smith also claims it did not have to comply with the post-enactment requirements of § 19-2404 because Ordinance #62-83 was not general or permanent. Section 19-2404 states:

> All by-laws or ordinances after their passage shall be recorded in a book kept for that purpose and shall be authenticated by the signature of the presiding officer of the governing body and the clerk or recorder, and all by-laws or ordinances of a general or permanent nature and all those imposing any fine, penalty or forfeiture, shall be published in some newspaper of general circulation in the corporation; provided, in incorporated towns where no newspaper is published written or printed notice posted in five [5] of the most public places in said corporation and shall be deemed a sufficient publication of any law or ordinance for the incorporated towns, and it shall be deemed a sufficient defense to any suit or prosecution of such fine, penalty or forfeiture to show that such publication was made.

Ordinances of general nature are those which are general and uniform in their application. Ordinances which endure until repealed are permanent. *Adams* v. *Sims*, 238 Ark. 696, 385 S.W.2d 13 (1964); *City of El Dorado* v. *Citizen's Light and Power Co.*, 158 Ark. 550, 250 S.W.2d 882 (1923). The ordinance in dispute here applied to all commercial and residential customers and obviously would remain in force until repealed. Therefore, the ordinance was both permanent and general and the post-enactment publication was mandatory.

On the cross-appeal, O.K. Foods, Inc., claims its judgment should have been $549,929.18 and Arkansas Proteins, Inc., claims its judgment should have been $252,341.56. The appellees argue that since Ordinance # 62-83 was never valid due to Fort Smith's failure to substantially comply with the pre-enactment requirements of § 19-4113, and post-enactment requirements of § 19-2404, they were entitled to all their overpayments for sewage service until a new ordinance became effective on May 1, 1986.

 Municipalities being creatures of the legislature can exercise only that power which is granted to them by it. *City of Hot Springs v. Gray*, 215 Ark. 243, 219 S.W.2d 930 (1949). Under § 19-4113 the legislature authorizes municipalities to establish, maintain, and adjust rates for sewer services by ordinance, requiring pre-enactment notice and a public hearing. Also post-enactment publication of all general or permanent ordinances is mandatory under § 19-2404. Since neither requirement was complied with in the present case, the ordinance was never valid. There is no constitutional provision or amendment which would allow Fort Smith to ignore § 19-4113 and § 19-2404 when establishing or changing its sewer rates.

The case will be affirmed on direct appeal and reversed on cross appeal. It is remanded with instructions to the court to enter judgment for appellee in the amount of the overpayment from October 1, 1983, until the new ordinance became effective on May 1, 1986. The voluntariness of the payment of the increased rates as a bar to refund was not raised or argued in the case before us and the presentation of such a defense is not precluded in any further litigation. See *City of Little Rock v. Cash, et al.*, 277 Ark. 494, 644 S.W.2d 299 (1982).

Affirmed on direct appeal and reversed and remanded on cross appeal.